UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ELI WAGSCHAL,                                              :
                                                          :
                                          Plaintiff, :
                                                          :     19 CV 2393 (CM)(BCM)
                           - against -                    :
                                                          :     **ORIGINAL FILED BY ECF**
JAMES SKOUFIS, in his individual and official  :
capacities as a New York State Senator and     :
former Assemblyman,                                    :
                                                          :
                                        Defendant. :
-------------------------------------------------------X


### DEFENDANT NEW YORK STATE SENATOR JAMES SKOUFIS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS


LETITIA JAMES
Attorney General of the
  State of New York
<u>Attorney for Defendant Senator Skoufis</u>
28 Liberty Street - 17th Floor
New York, New York 10005
Tel.: (212) 416-8476
david.diamond@ag.ny.gov


David B. Diamond
Assistant Attorney General
    <u>of</u> <u>Counsel</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

Preliminary Statement.................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY....................................... 2

1. The Parties ............................................................................................................... 2
   a. Senator Skoufis ............................................................................................... 2
   b. Plaintiff. .......................................................................................................... 3
2. Facebook ................................................................................................................. 3
3. Senator Skoufis' Facebook Page ............................................................................ 5
4. Plaintiff's Allegations Concerning Senator Skoufis' Campaign for State Senate ................... 6
5. Plaintiff's Allegations Concerning Senator Skoufis' August 3, 2018 Post to His FB Page ..... 6
6. Plaintiff's FB Comments in Response to Senator Skoufis' August 3, 2018 FB Post.............. 7
7. Senator Skoufis' Banning of Plaintiff from His FB Page........................................ 8
8. Plaintiff's Claims and the Relief He Seeks in this Action .................................... 10

Standards of Review ................................................................................................... 10

   A. Fed. R. Civ. P. 12(b)(1)..................................................................................... 10
   B. Fed. R. Civ. P. 12(b)(6)..................................................................................... 11
   C. Fed. R. Civ. P. 56............................................................................................. 11

ARGUMENT................................................................................................................ 12

POINT I      PLAINTIFF'S OFFICIAL CAPACITY DAMAGES CLAIMS AGAINST
              SENATOR SKOUFIS FAIL BASED ON STATE SOVEREIGN
              IMMUNITY.......................................................................................... 12

POINT II     PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE
              RELIEF ARE MOOT AND THEREFORE MUST BE DISMISSED
              BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION
              TO ADJUDICATE THEM ................................................................... 12

POINT III    SENATOR SKOUFIS IS ENTITLED TO QUALIFIED IMMUNITY
              FROM PLAINTIFF'S CLAIMS FOR MONEY DAMAGES ............................. 15

              A. Senator Skoufis is Entitled to Qualified Immunity Because the First
                 Amendment Rights Plaintiff Alleges the Senator Violated Were Not
                 Clearly Established During the Time Period at Issue ..................................... 18

i

B. Senator Skoufis is Entitled to Qualified Immunity Because It Was Objectively Reasonable for an Official in His Position to Believe that His Conduct Was Lawful ...................................................................................... 20

CONCLUSION .......................................................................................................................... 22

# TABLE OF AUTHORITIES

CASES                                                                          Page(s)

Ashcroft v. al-Kidd,
    563 U.S. 731 (2011)......................................................................................... passim

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...............................................................................................11

Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,
    968 F.2d 196 (2d Cir. 1992)..................................................................................11

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)...............................................................................................11

Campbell v. Greisberger,
    80 F.3d 703 (2d Cir.1996).....................................................................................13

Catanzo v. Wing,
    277 F.3d 99 (2d Cir. 2001)....................................................................................13

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986).......................................................................................... 11-12

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)....................................................................................2

City and County of San Francisco v. Sheehan,
    __ U.S. __, 135 S. Ct. 1765 (2015).......................................................................17

Dean v. Blumenthal,
    577 F.3d 60 (2d Cir. 2009)..............................................................................15, 19

Francis v. Fiacco,
    942 F.3d 126 (2d Cir. 2019)............................................................................. 16-18

Garcia v. Bill Me Later, Inc.,
    2015 WL 4578613 (S.D.N.Y. July 28, 2015) ........................................................3

Garcia v. Does,
    779 F.3d 84 (2d Cir. 2015)..............................................................................17, 19

Gonzalez v. City of Schenectady,
    728 F.3d 149 (2d Cir. 2013)..................................................................................17

Granite State Outdoor Adver., Inc. v. Town of Orange, Conn.,
    303 F.3d 450 (2d Cir.2002) (per curiam)...............................................................13

Harlow v. Fitzgerald,
    457 U.S. 800 (1982)...............................................................................................16

Knight First Amend. Inst. at Columbia Univ. v. Trump,
    928 F.3d 226 (2d Cir. 2019)...........................................................................18, 20

Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York,
    356 F.3d 365 (2d Cir. 2004)............................................................................13, 15

Leybinsky v. U.S. Immigr'n & Customs Enforcem't,
    553 Fed. App'x 108 (2d Cir. 2014)........................................................................13

Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.,
    397 F.3d 77 (2d Cir. 2005)....................................................................................13

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000)......................................................................... 2, 10-11

Malley v. Briggs,
    475 U.S. 335 (1986)...............................................................................................21

Manbeck v. Colvin,
    2016 WL 29631 (S.D.N.Y. Jan. 4, 2016) .............................................................15

McGowan v. United States,
    825 F.3d 118 (2d Cir. 2016) (per curiam).............................................. 16-17, 19

Mullenix v. Luna,
    __ U.S. __, 136 S. Ct. 305 (2015) (per curiam)....................................................16

Orozco v. Fresh Direct,
    2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016), appeal dismissed, 2017 WL
    5054219 (2d Cir. Mar. 10, 2017) .............................................................................3

Palkimas v. Bella,
    510 Fed. App'x 64 (2d Cir. 2013)..........................................................................21

Pearson v. Callahan,
    555 U.S. 223 (2009)...............................................................................................16

Preiser v. Newkirk,
    422 U.S. 395 (1975)...............................................................................................13

Price v. City of New York,
    2018 WL 3117507 (S.D.N.Y. June 25, 2018) ................................................. 19-20

Prins v. Coughlin,
    76 F.3d 504 (2d Cir. 1996)......................................................................................12

Ricciuti v. Gyezenis,
    834 F.3d 162 (2d Cir. 2016).....................................................................................16

Robison v. Via,
    821 F.2d 913 (2d Cir. 1987).....................................................................................17

Taravella v. Town of Wolcott,
    599 F.3d 129 (2d Cir. 2010).....................................................................................17

United States v. Akinrosotu,
    637 F.3d 165 (2d Cir. 2011).......................................................................................3

United States v. W.T. Grant Co.,
    345 U.S. 629 (1953)..................................................................................................13

Walczyk v. Rio,
    496 F.3d 139 (2d Cir. 2007).....................................................................................21

Will v. Michigan Dept. of State Police,
    491 U.S. 58 (1989)....................................................................................................12

Wilson v. Layne,
    526 U.S. 603 (1999)............................................................................................ 19-20

Zahra v. Town of Southold,
    48 F.3d 674 (2d Cir. 1995).......................................................................................21

Zieper v. Metzinger,
    474 F.3d 60 (2d Cir. 2007)................................................................................. 21-22

**CONSTITUTIONS**

U.S. Const. amend. I ....................................................................................... passim

U.S. Const. art. III...............................................................................................13

**FEDERAL STATUTES**

42 U.S.C. § 1983................................................................................10, 12, 20

**RULES**

Fed. R. Civ. P. 12(b)(1)................................................................................ 1-2, 10, 12

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 2, 11

Fed. R. Civ. P. 56 .................................................................................................................11

**MISCELLANEOUS AUTHORITIES**

Facebook, James Skoufis,
   www.facebook.com/JamesSkoufis/ .................................................................................5

Facebook Help Center, Banning and Moderation,
   www.facebook.com/help/248844142141117 ................................................................4

Facebook Help Center, How do I ban or unban someone from my Facebook Page?,
   www.facebook.com/help/185897171460026 ................................................................4

Facebook Help Center, How do I find and add friends on Facebook?,
   www.facebook.com/help/146466588759199 ................................................................5

Facebook Help Center, How do I hide or delete a comment from a post on my Facebook Page?,
   www.facebook.com/help/297845860255949 ..............................................................5, 8

Facebook Help Center, How do I request a verified badge on Facebook?,
   www.facebook.com/help/1288173394636262 ...............................................................4

Facebook Help Center, What is a verified Page or profile?,
   www.facebook.com/help/196050490547892 ................................................................4

Facebook Help Center, What's the difference between a profile, Page and group on Facebook?
   www.facebook.com/help/337881706729661 ................................................................3

Facebook Help Center, Why should I convert my profile to a Facebook Page?,
   www.facebook.com/help/201994686510247 ................................................................3

New York State Senator James Skoufis,
   www.nysenate.gov/senators/james-skoufis ....................................................................2

New York State Board of Elections, 2016 Results, N.Y.S. Assembly,
   www.elections.ny.gov/NYSBOE/elections/2016/General/2016Assembly.pdf ........................2

New York State Board of Elections, 2018 Results, N.Y.S. Senate,
   www.elections.ny.gov/NYSBOE/elections/2018/general/2018NYSenate.pdf ........................2

## Preliminary Statement

Defendant New York State Senator James Skoufis ("Senator Skoufis" or the "Senator"), by his attorney, Letitia James, Attorney General of the State of New York, respectfully submits this memorandum of law in support of his motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) on the grounds of mootness and qualified immunity.

Plaintiff Eli Wagschal ("plaintiff") asserts claims against Senator Skoufis for violations of his First Amendment rights based on the Senator's alleged blocking of his ability to post comments and otherwise interact with social media users on the Senator's designated page on the social media platform known as "Facebook," and the Senator's purported deleting of comments he posted on the page.  Plaintiff seeks declaratory and injunctive relief, as well as money damages based on these alleged First Amendment violations.

Plaintiff's claims seeking declaratory and injunctive should be dismissed for lack of subject matter jurisdiction on the grounds of mootness because shortly after plaintiff filed this action, on or around March 19, 2018, Senator Skoufis unblocked plaintiff's access to his Facebook page, and at that time, the comments that plaintiff insists the Senator deleted were restored to the page.  Based on these background facts, plaintiff's claims for declaratory and injunctive relief are now moot because the parties lack a legally cognizable interest in their outcome, and therefore they must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Further, Senator Skoufis is entitled to qualified immunity on plaintiff's claims for damages because under the governing law, the First Amendment rights that plaintiff purports to assert in the context of the Senator's Facebook page were not clearly established at the time he alleges those rights were violated.  Moreover, even if the rights were clearly established, Senator

Skoufis is still entitled to qualified immunity because it was objectively reasonable for him to believe that his conduct was lawful.  Plaintiff's damages claims must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## STATEMENT OF FACTS[1] AND PROCEDURAL HISTORY

**1.  The Parties.**

**a.  Senator Skoufis.**

Senator Skoufis is the Senator for New York's 39th Senate District.  (Exhibit A,[2] Compl. ¶10; N.Y. State Senator James Skoufis, www.nysenate.gov/senators/james-skoufis).  He began serving on January 1, 2019, after he was elected to the office on November 6, 2018.  (Ex. A, Compl. ¶10; Exhibit D (Dep'n of Plaintiff, dated Sept. 26, 2019 ("Pl's Dep."), p. 17, line 21 – p. 19, line 9); N.Y. State Bd. of Elections, 2018 Results, N.Y.S. Senate, www.elections.ny.gov/NYSBOE/elections/2018/general/2018NYSenate.pdf).

Before serving as Senator, and while campaigning for that office, Senator Skoufis was the Assemblyman for New York's 99th Assembly District.  (Ex. A, Compl. ¶10; Ex. D (Pl's Dep., p. 17, line 18 – p. 18, line 11); N.Y. State Bd. of Elections, 2016 Results, N.Y.S. Assembly, www.elections.ny.gov/NYSBOE/elections/2016/General/2016Assembly.pdf).

---

[1] Also submitted in support of Senator Skoufis' motion are the declarations of Assistant Attorney General David B. Diamond ("Diamond Declaration") and Senator Skoufis ("Skoufis Declaration").  The Diamond Declaration attaches plaintiff's Complaint and exhibits thereto; documents referenced in the Complaint; and the transcript of plaintiff's deposition completed on September 26, 2019 and exhibits thereto.  It is well settled that on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider the Complaint, any exhibits attached thereto, and documents referenced therein, as well as matters of which judicial notice may be taken.  E.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  Further, under Point V.F.4 of Court's Individual Practices and Procedures, plaintiff's deposition is to be considered in evaluating Senator Skoufis' Rule 12(b)(6) motion for dismissal on qualified immunity grounds upon conversion of that aspect of the motion into one for summary judgment.  The Skoufis Declaration, in turn, is submitted for purposes of supporting Senator Skoufis' motion to dismiss plaintiff's claims for declaratory and injunctive relief under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction based on mootness.  It is settled law that the Court may consider Senator Skoufis' declaration in ruling on his motion under Rule 12(b)(1).  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

[2] Unless otherwise noted, citations to exhibits (i.e., "Exhibit" or "Ex.") refer to exhibits to the Diamond Declaration.

**b. Plaintiff.**

Plaintiff works as an associate attorney for the law firm that is representing him in this action, The Law Office of Richard L. Giampa, P.C.  (Ex. A, Compl. ¶9).  He resides in the Town of Monroe, New York, which is within the geographical boundaries of New York's 39th Senate District.  (Id.; Ex. D (Pl's Dep. p. 18, line 18 – p. 19, line 7)).

**2. Facebook.**

Facebook (hereinafter "FB") is a well-known and widely-used internet social media platform.  According to plaintiff, FB has "approximately 1.94 billion monthly users worldwide, including approximately 234 million [] in the United States and Canada."  (Ex. A, Compl. ¶11).  FB allows users to post messages and photos to their FB profile, page, or group; respond to or share other FB users' messages or photos; and interact with other FB users concerning their posts.  (Id. ¶12; also FB Help Center, What's the difference between a profile, Page and group on Facebook?, www.facebook.com/help/337881706729661; id., Why should I convert my profile to a Facebook Page?, www.facebook.com/help/201994686510247).[3]

FB provides its users with an array of functions designed to facilitate posting, sharing, and other means of publishing and communicating information on its social media platform.  (Ex. A, Compl. ¶¶12-19).  For example, FB users can "subscribe to other users posts by 'following'" another FB user's page or profile.  (Id. ¶14).  This "'following'" function allows

---

[3] The internet addresses cited in Point 2 of this Statement of Facts and Procedural History reference pages from FB's website addressing the use and functionality of FB's internet social media platform.  The Court may take judicial notice of FB's representations on these website pages.  E.g., Orozco v. Fresh Direct, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016) (taking judicial notice of representations in defendant retailer's website where website was "incorporated by reference in the Complaint" and "at the center of plaintiff's allegations"), appeal dismissed, 2017 WL 5054219 (2d Cir. Mar. 10, 2017); Garcia v. Bill Me Later, Inc., 2015 WL 4578613, at *4 (S.D.N.Y. July 28, 2015) (a "Court may take judicial notice of facts that are not subject to reasonable dispute and can accurately and readily be confirmed by accessing a corporate website"); see also United States v. Akinrosotu, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of Bureau of Prisons website information concerning defendant's release date).

users to see all messages that are posted [] or shared by the [other] users or pages they have followed." (Id.).

FB users can also "post replies to other users' posts or to comments on their own posts." (Ex. A, Compl. ¶15). Replies posted by a FB user appear on the post replied to, among all other users' replies to the same post. (Id.). FB users can also make use of a "sharing" function that permits a user to "share" another user's post by publishing it on the timeline displayed among their own posts on their own profile, page, or group. (Id. ¶16). Similarly, FB users can react to other users' posts "using graphics[,] without replying or posting their own comment." (Id. ¶17).

In relation to certain FB pages or profiles, the FB interface displays a blue verification badge next to a page or profile name to indicate that FB has confirmed that the particular page or profile is the authentic FB presence of the public figure, celebrity, or brand the page or profile purports to represent. (Ex. A, Compl. ¶18; FB Help Center, What is a verified Page or profile?, www.facebook.com/help/196050490547892; id., How do I request a verified badge on Facebook?, www.facebook.com/help/1288173394636262).

Further, FB provides functions that permit its users to limit access to their FB page by other users or the functionality of their page for other users. (FB Help Center, Banning and Moderation, www.facebook.com/help/248844142141117). For instance, FB users can choose to ban other users from their page. (Ex. A, Compl. ¶19). When a FB user is banned from another user's page, among other things, the banned user cannot "publish to that page, react to posts on that page, or comment on the posts on [the banning user's] page." (Id. ¶¶19-20; FB Help Center, How do I ban or unban someone from my Facebook Page?, www.facebook.com/help/185897171 460026). However, a FB user who has been banned from a page can still view the page and can still share content from the page to other places on FB. (Id.).

FB also allows users to hide or delete comments posted on their FB page by other users. (FB Help Center, How do I hide or delete a comment from a post on my Facebook Page?, www.facebook.com/help/297845860255949).  When a FB user hides a comment made by another user concerning a post on the hiding user's FB page, the comment remains on the page but is only visible to the user who wrote the post and to their FB "friends."  (Id.; also FB Help Center, How do I find and add friends on Facebook?, www.facebook.com/help/1464665887591 99).  In contrast, when a user deletes a comment by another user to a post on his or her page, the comment is "permanently removed" from the page.  (FB Help Center, How do I hide or delete a comment from a post on my Facebook Page?, www.facebook.com/help/297845860255949).

**3.   Senator Skoufis' Facebook Page.**

Plaintiff alleges that Senator Skoufis "has embraced social media as a key means of communicating with his constituents."  (Ex. A, Compl. ¶21).  According to plaintiff, to facilitate his social media communication with constituents, Senator Skoufis "created and maintains" a FB page "associated with his public office." (Id.).  Senator Skoufis' FB page can be accessed at www.facebook.com/JamesSkoufis/.  (Id. fn. 1).  Plaintiff alleges that Senator Skoufis' FB page is a "'verified'" page because FB displays a blue verification badge next to his name "signifying that it is an authentic page of public Figure, media company, or brand."  (Id. ¶22).

Plaintiff further alleges that Senator Skoufis' FB page is "open and viewable to all registered FB users regardless of whether they have been banned from the Page as well as to individuals who do not have a [FB] account."  (Ex. A, Compl. ¶23).  Plaintiff avers that Senator Skoufis uses his FB page in his official capacity to "communicate information to (and receive comments from) individuals about a variety of topics, such as local and state developments, politics, and about his policies."  (Id. ¶24).  He also contends that 12,304 FB users "follow"

Senator Skoufis' FB page, and that the page does not contain a disclaimer or provide notice of "what topics or subject matter[s] may be discussed, what speech is subject to removal, or what online conduct may result" in users being banned from the page.  (Id. ¶25).

**4.  Plaintiff's Allegations Concerning Senator Skoufis' Campaign for State Senate.**

According to plaintiff, while Senator Skoufis was campaigning to be elected to the New York State Senate seat for the 39th Senate District, he used his FB page to influence voters' decision-making processes.  (Ex. A, Compl. ¶27.  In particular, he asserts that the Senator promoted his policies, corresponded with constituents, criticized his opponents, and highlighted his political activities by posting commentary, photographs, and video on his FB page.  (Id.).

As part of this effort, plaintiff insists that Senator Skoufis launched a malicious campaign against the Hasidic population as a means of advancing his campaign.  (Ex. A, Compl. ¶26). Specifically, plaintiff contends that Senator Skoufis believed that "'the surest way to get elected . . . is to campaign against the Hasidic population.'"  (Id. & n. 2).  As part of the alleged malicious campaign by Senator Skoufis, plaintiff points to a campaign letter the Senator supposedly published in which, among other things, he promised to fight to stop the establishment of any new Hasidic village in the Town of Monroe.  (Id. ¶27).

**5.  Plaintiff's Allegations Concerning Senator Skoufis' August 3, 2018 Post to His FB Page.**

Plaintiff further alleges that to advance his alleged malicious campaign against the Hasidic population, on August 3, 2018, Senator Skoufis shared a link on his FB page to a news article published that day, which reported that "'[m]ore than 100 residents, most of them Hasidic'" had recently petitioned the Town of Monroe "'to form a new village outside Kiryas Joel.'"  (Ex. A, Compl. ¶30 & n. 3; Ex. D (Pl's Dep., p. 38, line 21 – p. 40, line 24) & Exhibit E (Pl's Dep. Ex. E); Ex. D (Pl's Dep., p. 41, line 25 – p. 42, line 16) & Exhibit F (Pl's Dep. Ex.

F)).  Below the news article, Senator Skoufis posted a comment in which, among other things, he characterized the petition as "nothing but a revenge-fueled attempt to inflict harm on the people of Monroe and Orange County."  (Ex. A, Compl. ¶¶30-32; Ex. E (Pl's Dep. Ex. E).  Plaintiff alleges that the Senator's FB post of the article and comment drew hundreds of responsive comments, "most of them blatantly bashing <u>Hasidic</u> people."  (Ex. A, Compl. ¶33 (italics in original); Ex. D (Pl's Dep., p. 47, line 19 – 48, line 14 & Exhibit B (Compl. Ex. A)).

**6.  Plaintiff's FB Comments in Response to Senator Skoufis' August 3, 2018 FB Post.**

In plaintiff's view, many of the comments posted in the comment thread below Senator Skoufis' August 3, 2018 FB post were racist, and he voiced his disgust at them by using FB to post his own replies to some of them.  (Ex. A, Compl. ¶34; Ex. D (Pl's Dep., p. 48, line 15 – 49, line 6; p. 53, lines 3-14)).  After he allegedly observed the racist tenor of the comments "turn from bad to worse," plaintiff confronted Senator Skoufis about his failure to condemn the racist comments by posting a comment to the relevant thread stating, "Dear Assemblyman, your lack of protesting the flagrant racism on this thread is equivalent to an endorsement."  (Ex. A, Compl. ¶34; Ex. D (Pl's Dep., p. 59, line 6 – 61, line 22; p. 62, lines 6-21 & Exhibit C (Compl. Ex. B)).

Plaintiff contends that Senator Skoufis ignored his admonition but found time to post a comment to the thread correcting another FB user for incorrectly referring to him as a "congressman."  (Ex. A, Compl. ¶35).  In response to the Senator's comment correcting the other FB user's understanding of his official title, plaintiff posted two further comments to the thread, again admonishing the Senator for failing to disavow the racist nature of other users' comments. (<u>Id.</u>; Ex. D (Pl's Dep., p. 77, line 18 – 83, line 20) & Ex. C (Pl's Dep. Ex. B)).  Plaintiff contends that Senator Skoufis again ignored his rebuke and therefore he posted another comment

7

chastising the Senator for failing to condemn the purported racist comments.  (Ex. A, Compl.

¶¶36-37, Ex. D (Pl's Dep., p. 92, lines 5-16) & Ex. C (Pl's Dep. Ex. B)).

**7.  Senator Skoufis' Banning of Plaintiff from His FB Page.**

Plaintiff claims that at that point – on or around August 5, 2018 – Senator Skoufis banned

him from his official FB page and deleted his comments. [4] (Ex. A, Compl. ¶38; Ex. D (Pl's Dep.,

p. 52, line 3 – p. 53, line 2)).  He asserts that Senator Skoufis' act of banning him from his

official FB page prevented him "from participating in the Senator's posts and engaging in

discussion with other constituents."  (Ex. A, Compl. ¶38).

Plaintiff concedes that shortly after he filed his Complaint in this case on March 18,

2019, Senator Skoufis unblocked or unbanned him from posting on his FB page, and his

comments that he alleges the Senator deleted became visible again on the Senator's FB page.

(Ex. D (Pl's Dep., p. 58, lines 4-22; p. 62, line 16 – p. 63, line 21; p. 94, line 13 – p. 97, line 25).

Once he was unblocked or unbanned from Senator Skoufis' FB page, plaintiff was able to post

comments to the page and did so on several occasions thereafter. (Ex. D (Pl's Dep., p. 98, line 8

– p. 112, line 23) & Exs. I, J, K, L, M).  Indeed, plaintiff admits that as of May 29, 2019 he was

not blocked from posting on Senator Skoufis' FB page and was never blocked after that date.

(Id. (Pl's Dep., p. 100, lines 4-9; p. 106, lines 8-12, p. 108, line 19 – p. 112, line 23)).

In particular, plaintiff admits that Senator Skoufis made a May 29, 2019 post to his FB

page, and shortly thereafter he accessed the page and posted two comments responding to the

Senator's post and 18 replies to comments by other users in the comment thread.  (Ex. D (Pl's

---

[4] Plaintiff's assertion that the comments were "deleted" by Senator Skoufis is based solely on the fact that the comments were not visible after the Senator blocked his access to the Senator's FB page.  (Ex. D, Pl's Dep., p. 68, line 17 – p. 70, line 23; p. 71, line 19 – p. 76, line 9.  Plaintiff also conceded that the comments may not have been deleted but merely hidden using the FB function that permits a user to hide a comment posted by another.  (Ex. D (Pl's Dep., p. 62, line 6 – p. 71, line 18) & Exhibit G (Pl's Dep. Ex. H); Ex. D (Pl's Dep., p. 83, line 21 – p. 87, line 4) & Exhibit H (Pl's Dep. Ex. I); FB Help Center, How do I hide or delete a comment from a post on my Facebook Page?, www.facebook.com/help/297845860255949).

Dep., p. 98, line 8 – p. 101, line 18) & Exhibit I (Pl's Dep. Ex. K)).  Likewise, plaintiff admits

that he posted his own comments or replies to comments by other users on Senator Skoufis' FB

page on June 7, June 19, June 23, and June 24, 2019.  (Ex. D (Pl's Dep., p. 101, line 20 – p. 112,

line 23) & Exhibit J (Pl's Dep. Ex. L), Exhibit K (Pl's Dep. Ex. M), Exhibit L (Pl's Dep. Ex. N),

Exhibit M (Pl's Dep. Ex. O)).

     As to the latter posting of June 24, 2019, Senator Skoufis had posted a photo and

comment on that date regarding legislation regulating school buses; plaintiff's brother, Joseph

Wagschal, posted a response criticizing the Senator; and in the comment thread below it, Senator

Skoufis responded with a reply stating, in relevant part:

> Mr. Wagschal, whose family is actively ripping the Town of Monroe apart at the
> seams [sic], has far too much time on his hands and is overly obsessed.  Pay no
> attention to his rantings and ravings.

(Ex. D (Pl's Dep., p. 108, line 19 – p. 111, line 24 & Ex. M (Pl's Dep. Ex. O) at 1, 2).  In

response to the Senator's reply, plaintiff posted a comment in the relevant thread stating, "Mr.

Skoufis, you've just accused a rather big family of 'actively ripping Monroe apart.'  Better be

prepared to prove the truth of your statement, or the AAG will have a tough time."  (Ex. M (Pl's

Dep. Ex. O) at 5).  The next day, June 25, 2019, acting as the attorney for members of his family,

plaintiff faxed Senator Skoufis a letter threatening litigation if he did not retract his statement

concerning the Wagschal family and "offer a sincere public apology."  Ex. D (Pl's Dep., p. 112,

line 24 – p. 116, line 19 & Exhibit N (Pl's Dep. Ex. P)).

     Plaintiff admits that in the four months that followed his transmittal of that June 25, 2019

letter to Senator Skoufis, and through the date of his deposition on September 26, 2019, he was

never again banned from Senator Skoufis' FB page.  (Ex. D (Pl's Dep., p. 112, lines 14-23)).

Senator Skoufis represents that he unblocked plaintiff's access to his FB page within a few days

of plaintiff's filing of this action, and has not and does not intend to ban or block plaintiff's

access to his FB page again at any time in the future. (Declaration of Defendant James Skoufis in

Supp. of His Motion to Dismiss the Compl., dated Dec. 13, 2019 ("Skoufis Decl.") ¶¶6-11).

These representations are undisputed.

**8.  Plaintiff's Claims and the Relief He Seeks in this Action.**

In this action, plaintiff asserts claims for violation of his First Amendment right pursuant

to 42 U.S.C. § 1983, based on Senator Skoufis' alleged acts of banning him from his FB page

and deleting his comments.  (Ex. A, Compl. ¶¶6-7, 40-43).  More specifically, plaintiff asserts

that Senator Skoufis' actions violated his First Amendment rights by imposing viewpoint-based

restrictions on his speech in a public forum and by impairing his ability to petition the

government for a redress of grievances.  (Id. ¶¶41-43).  Plaintiff asserts these claims against

Senator Skoufis in both his official and individual capacities.  (Id. at p. 1).

For relief, plaintiff seeks (i) a declaration that Senator Skoufis' blocking of him from his

FB page was unconstitutional; (ii) an injunction directing the Senator to unblock him from his

FB page and restraining any further blocking of his access to the page; (iii) unspecified

compensatory damages for the violation of his First Amendment rights; (iv) attorney fees, costs,

and expenses: and (v) punitive damages in an unspecified amount.  (Ex. A, Compl. at p. 14 of

14 (Prayer for Relief)).

<b>Standards of Review</b>

**A.    Fed. R. Civ. P. 12(b)(1).**

Under Fed. R. Civ. P. 12(b)(1), a complaint is properly dismissed for lack of subject

matter jurisdiction "when the district court lacks the statutory or constitutional power to

adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "In considering a

motion to dismiss for lack of subject matter jurisdiction, [courts] accept as true all material

10

factual allegations in the complaint.  However, argumentative inferences favorable to the party

asserting jurisdiction should not be drawn." Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l

Ltd., 968 F.2d 196, 198 (2d Cir. 1992).  Plaintiff bears the burden of proving that subject matter

jurisdiction exists, and in evaluating the issue the Court "may refer to evidence outside the

pleadings." Makarova, 201 F.3d at 113.

**B.     Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id.  This plausibility standard demands more than a "sheer possibility that

a defendant has acted unlawfully." Id.  A complaint that merely alleges facts "consistent with"

or "compatible with" liability fails to state a cognizable claim. Twombly, 550 U.S. at 557; Iqbal,

556 U.S. at 680.

**C.     Fed. R. Civ. P. 56**

Summary judgment must be granted when "the movant shows that there is no genuine

dispute as to any material fact." Fed. R. Civ. P. 56.  Thus, "a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial" cannot survive summary judgment because "[i]n such

a situation, there can be no genuine issue as to any material fact, since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).  In that

event, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving

party has failed to make a sufficient showing on an essential element of her case with respect to

which she has the burden of proof." Id. at 323 (citation omitted).

## ARGUMENT

### POINT I

### PLAINTIFF'S OFFICIAL CAPACITY DAMAGES CLAIMS AGAINST SENATOR SKOUFIS FAIL BASED ON STATE SOVEREIGN IMMUNITY

Insofar as plaintiff seeks money damages from Senator Skoufis in his official capacity

pursuant to 42 U.S.C. § 1983, the claims fail under Will v. Michigan Dept. of State Police, 491

U.S. 58, 71 (1989).  Senator Skoufis is a state official.  A suit for money damages against a state

official in his or her official capacity is not a suit against the official, rather it is a suit against the

state.  States enjoy sovereign immunity from damages claims under Section 1983.  Id.  Plaintiff's

damages claims against Senator Skoufis in his official capacity must therefore be dismissed for

lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

### POINT II

### PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE MOOT AND THEREFORE MUST BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION TO ADJUDICATE THEM

Plaintiff's claims for declaratory and injunctive relief are moot under the applicable law

because plaintiff concedes that months ago Senator Skoufis unblocked his access to the Senator's

FB page and simultaneously restored his comments to the page that were purportedly deleted.

The Court therefore lacks subject matter jurisdiction over plaintiff's claims for declaratory and

injunctive relief, and those claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

"A case is deemed moot where the problem sought to be remedied has ceased, and where

there is 'no reasonable expectation that the wrong will be repeated.'" Prins v. Coughlin, 76 F.3d

504, 506 (2d Cir. 1996) (quoting <u>Preiser v. Newkirk</u>, 422 U.S. 395, 402 (1975), and <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 632 (1953)).  Mootness of an entire case or a particular claim divests the Court of Article III subject matter jurisdiction over the case or claim. <u>Leybinsky v. U.S. Immigr'n & Customs Enforcem't</u>, 553 Fed. App'x 108, 109 (2d Cir. 2014) ("Under Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action.") (internal quotation marks omitted). <u>Catanzo v. Wing</u>, 277 F.3d 99 (2d Cir. 2001) ("when the issues are no longer 'live' or the parties lack a legally cognizable interest in the outcome, a case is moot and the federal court is divested of jurisdiction over it") (internal citation and quotation marks omitted).

Where mootness is premised on a defendant's "voluntary cessation" of the conduct that the plaintiff claims violated his or her rights, dismissal for lack of jurisdiction on mootness grounds is proper "'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" <u>Granite State Outdoor Adver., Inc. v. Town of Orange, Conn.</u>, 303 F.3d 450, 451 (2d Cir.2002) (per curiam) (quoting <u>Campbell v. Greisberger</u>, 80 F.3d 703, 706 (2d Cir.1996)).  Further, when, as here, the defendant is a government entity or an official executing government policy, deference is afforded to the defendant's representations that the alleged unlawful conduct has ceased and will not recur. <u>Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.</u>, 397 F.3d 77, 88 (2d Cir. 2005); <u>Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York</u>, 356 F.3d 365, 376 (2d Cir. 2004).

Plaintiff's claims for declaratory and injunctive relief are moot under the voluntary cessation doctrine because both prongs of the doctrine are squarely met in this case.  In relation

13

to the first prong, plaintiff admits that shortly after he filed this action, and no later than May 29, 2019, his access to the Senator Skoufis' FB page was unblocked.  Ex. D (Pl's Dep., p. 58, lines 4-22; p. 97, line 9 – p. 100, line 9; p. 106, lines 8-12).  Plaintiff further admits that since he was unblocked he has posted comments on Senator Skoufis' FB page and has had full access to the page.  Ex. D (Pl's Dep., p. 98, line 8 – p. 112, line 23) & Exs. I, J, K, L, M.  In fact, Senator Skoufis unblocked plaintiff's access to his FB page within days of plaintiff's filing of this action on March 18, 2019.  Skoufis Decl. ¶¶6-8.  The Senator has not re-blocked plaintiff's access to his FB page in the approximately nine months that have since elapsed and does not intend to block plaintiff's access at any time in the future.  Id. ¶¶9-11.

Indeed, Plaintiff's unfettered access to Senator Skoufis' FB page has continued to this day without exception, notwithstanding that many of the comments he has posted to the page since his access was unblocked are overtly critical of the Senator and his policies, or confrontational to other FB users on the page.  See Ex. I (p. J (at pp. 2-8); Ex. J (at p. 5); Ex. L (at p. 2); Ex. M (at p. 5).  Tellingly, plaintiff's unlimited access to Senator Skoufis' FB page has continued despite his transmittal of a June 25, 2019 letter to the Senator, as counsel for several of his family members, threatening the Senator with litigation if he did not withdraw a comment on his FB page and offer a public apology.  Ex. D (Pl's Dep., p. 112, line 24 – p. 116, line 19 & Ex. N).  Accordingly, there is no reasonable expectation that the alleged violation at issue will recur.

As to the second prong of the voluntary cessation doctrine, plaintiff admits that Senator Skoufis' unblocking of his access to the Senator's FB page has restored both his ability to post comments and replies to the page, as well as the visibility of the comments he claims the Senator deleted.  Ex. D (Pl's Dep., p. 92, line 17 – p. 93, line 22; p. 94, line 13 – p. 96, line 8).  Accordingly, the effects of the alleged violation have been eradicated.

Based on the foregoing facts, plaintiff's claims for injunctive and declaratory relief are moot because (i) there is no objectively reasonable expectation that Senator Skoufis will violate plaintiff's alleged First Amendment rights in the future by blocking plaintiff from his FB page, and (ii) all of the adverse effects that allegedly occurred from Senator Skoufis' purported unlawful blocking of plaintiff's access to the Senator's FB page have been eliminated.  E.g., Lamar Advertising, 356 F.3d at 377-78 (plaintiff's First Amendment challenge to local ordinance regulating signage held moot where defendant town amended ordinance to eliminate unconstitutionality and "disclaimed any plans" to revert to prior ordinance); Dean v. Blumenthal, 577 F.3d 60, 65 (2d Cir. 2009) (First Amendment claims for declaratory and injunctive relief challenging Connecticut Attorney General's office policy banning campaign donations were moot based on, inter alia, removal of ban, non-enforcement for extended period, and representation of non-enforcement in the future); Manbeck v. Colvin, 2016 WL 29631 (S.D.N.Y. Jan. 4, 2016) (declaratory and injunctive relief claims against Commissioner of Social Security Administration ("SSA") were moot based on discontinuance of SSA proceeding against plaintiff, deference to SSA's representation it would not reinstitute proceeding, and extended time during which proceeding was not reinstituted).  Accordingly, plaintiff's claims for declaratory and injunctive relief must be dismissed for lack of subject matter jurisdiction.

## POINT III

### SENATOR SKOUFIS IS ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S CLAIMS FOR MONEY DAMAGES

With respect to plaintiff's claims for money damages against Senator Skoufis in his individual capacity, the Senator is entitled to qualified immunity from liability because at the time of the alleged unlawful conduct (i) the law was not clearly established that Senator Skoufis'

conduct violated plaintiff's First Amendment rights, and (ii) it was objectively reasonable for Senator Skoufis to believe his conduct did not violate plaintiff's First Amendment rights. .

"The doctrine of qualified immunity protects 'government officials performing discretionary functions' from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Francis v. Fiacco, 942 F.3d 126, 139 (2d Cir. 2019) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity bars a plaintiff's claim the Court must apply a two-step analysis. Id. Under that analysis, "'[q]ualified immunity shields federal and state officials from money damages unless [the] plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Id. (quoting Ricciuti v. Gyezenis, 834 F.3d 162, 167 (2d Cir. 2016) (alterations in original). Pursuant to the Supreme Court's holding in Pearson v. Callahan, 555 U.S. 223 (2009), district courts are to "exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances of the particular case at hand." Id. at 236; Francis, 942 F.3d at 140.

Focusing on the second, "clearly established" prong, it provides for the protection of "officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix v. Luna, __ U.S. __, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted); Francis, 942 F.3d at 145. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." McGowan v. United States, 825 F.3d 118, 124 (2d Cir. 2016) (per curiam) (internal quotation marks omitted). "In making this determination," the court must "consider

16

Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." Id.; Francis, 942 F.3d at 150; Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"While the [Supreme] Court does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Francis, 942 F.3d at 145 (internal quotation marks omitted, alterations supplied). This latter articulation of the "clearly established" standard is consistent with the Supreme Court's repeated prior admonishments to lower federal courts "not to define clearly established law at a high level of generality" and instead, focus on the particularized facts of the case. Id. (quoting City and County of San Francisco v. Sheehan, __ U.S. __, 135 S. Ct. 1765, 1775-76 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011))). Under this approach, the qualified immunity doctrine applies to provide government officials with "'breathing room to make reasonable but mistaken judgments about open legal questions.'" Francis, 942 F.3d at 146

In addition, even where the statutory or constitutional right in question was "'clearly established,'" a defendant official is still entitled to qualified immunity if "it was 'objectively reasonable'" for the official "to believe that the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (citing Taravella v. Town of Wolcott, 599 F.3d 129, 133-34 (2d Cir. 2010)); Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987). Only "the plainly incompetent or those who knowingly violate the law'" should be denied the defense. Francis, 942 F.3d at 145 (quoting al Kidd, 563 U.S. at 743, internal quotation marks omitted).

Thus, in sum, for the law to be clearly established under the second prong of the qualified immunity analysis, "at the time of the [official's] challenged conduct, the contours of [the] right [must have been] sufficiently clear that every reasonable official would have understood that

what he is doing violates that right." <u>al-Kidd</u>, 563 at 741 (alternations and emphasis supplied); <u>Francis</u>, 942 F.3d at 146.

A.    **Senator Skoufis is Entitled to Qualified Immunity Because the First Amendment Rights Plaintiff Alleges the Senator Violated Were Not Clearly Established During the Time Period at Issue.**

In the instant action, Senator Skoufis is entitled to qualified immunity because at the time that plaintiff claims the Senator violated his First Amendment rights, the First Amendment rights plaintiff asserts as the bases for his claims were not clearly established.  In the Second Circuit, the existence of a First Amendment right to comment or engage in other expressive conduct in the context of a government official's social media account was first established by the Circuit Court's July 9, 2019 decision in <u>Knight First Amend. Inst. at Columbia Univ. v. Trump</u>, 928 F.3d 226 (2d Cir. 2019) ("<u>Knight</u>"), <u>affirming</u>, <u>Knight First Amend. Inst. at Columbia Univ. v. Trump</u>, 302 F. Supp. 3d 541 (S.D.N.Y. 2018).  In <u>Knight</u>, the Second Circuit held that a government official's social media account – in that case President Trump's "Twitter" account – could, insofar as the account was used in a governmental capacity and opened for public comment, be deemed a "public forum" in which the First Amendment would be violated by the official's blocking of comments or other expressions by social media users on the basis of their viewpoint.  <u>Knight</u>, 928 F.3d at 236-39.

Senator Skoufis purportedly violated plaintiff's First Amendment rights on or around August 5, 2018, by blocking plaintiff's ability to comment or otherwise interact with FB users on the Senators' FB page and deleting comments he posted on the page, until on or around May 19, 2019, when plaintiff was unblocked.  Ex. A, Compl. ¶¶37-38; Ex. D (Pl's Dep., p. 52, line 3 – p. 53, line 2; p. 100, lines 4-9; p. 106, lines 8-12); Skoufis Decl. ¶¶6-11.  Because the Second Circuit's decision in <u>Knight</u> was not issued until July 9, 2019, approximately one year after

plaintiff was blocked (and approximately one month after plaintiff admits he was unblocked), during the period at issue there was no "binding authority in existence . . . that either 'directly address[ed] the reasonableness" of Senator Skoufis' conduct or "'clearly foreshadow[ed]' a ruling in plaintiff's favor." McGowan, 825 F.3d at 124 (alterations in original, quoting Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2014)); see also Price v. City of New York, 2018 WL 3117507, at *18 (S.D.N.Y. June 25, 2018) (holding individual defendants were entitled to qualified immunity on this basis).  Likewise, at the time there was no "robust 'consensus of cases of persuasive authority'" holding that Senator Skoufis' conduct was unlawful.  al-Kidd, 563 U.S. at 742 (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)); Price, 2018 WL 3117507, at *18 (same).

  Senator Skoufis is therefore entitled to qualified immunity as a matter of law on the grounds that the First Amendment rights that plaintiff asserts as the bases for his claims were not clearly established at the time the Senator allegedly violated those rights.  McGowan, 825 F.3d at 124 (official entitled to qualified immunity on First Amendment retaliation claim because plaintiff inmate's putative right to publish political opinion pieces was not clearly established under Supreme Court and Second Circuit precedent and not the subject of a consensus of persuasive authority); see also Dean v. Blumenthal, 577 F.3d 60, 69 (2d Cir. 2009) ("We do not believe that a reasonable person would have known of a firmly established First Amendment right to receive campaign contributions when the [defendant's] challenged policy was in effect. Indeed, [plaintiff] has failed to cite any decision available during the relevant time period in which either this Court or the Supreme Court specifically held that a candidate has a First Amendment right to receive campaign contributions."); Price, 2018 WL 3117507, at *18.

  The district court's decision in Price v. City of New York, 2018 WL 3117507 (S.D.N.Y. June 25, 2018) is particularly instructive on this point.  In Price, ruling on the defendants' motion

to dismiss, District Judge Failla of this Court held that three government official defendants were entitled to qualified immunity on the plaintiff's § 1983 First Amendment claim alleging that they violated her First Amendment rights by blocking her from posting comments to official government Twitter accounts for which they were responsible. Price, 2018 WL 3117507 at *2-4, 16-18. Citing the then-recently issued district court decision in Knight as part of its analysis, the district court in Price held that the plaintiff had adequately pleaded a violation of her First Amendment rights. Id. at 16. However, the district court held the defendants were entitled to qualified immunity at the pleading stage because when they allegedly blocked the plaintiff's access to their Twitter accounts "there was neither binding authority, nor 'a robust 'consensus of cases of persuasive authority' holding that [their alleged] conduct was unlawful." Price, 2018 WL 3117507, at *18 (citing al-Kidd 563 U.S. at 742 (quoting Wilson, 526 U.S. at 617)).

The same conditions apply here. During the time plaintiff alleges his First Amendment rights were violated, there was no Supreme Court or Second Circuit precedent establishing the right nor was there a robust consensus of persuasive case law as to the existence of the right. Price, 2018 WL 3117507, at *18. Accordingly, Senator Skoufis is entitled to qualified immunity on plaintiff's First Amendment damages claims and those claims should therefore be dismissed.

**B.      Senator Skoufis is Entitled to Qualified Immunity Because It Was Objectively Reasonable for an Official in His Position to Believe that His Conduct Was Lawful.**

Even if the Court finds that the First Amendment rights plaintiff asserts in the social media context were clearly established when Senator Skoufis blocked plaintiff's access to his FB page and allegedly deleted his comments, Senator Skoufis is entitled to qualified immunity because it was objectively reasonable for him to belief that such conduct was lawful.

It is simply not enough for plaintiff to note, as he does here, that the First Amendment protects viewpoint neutrality in a public forum and the ability to petition the government, and then conclusorily assert that Senator Skoufis' violated those rights by blocking plaintiff's access to his FB page and deleting his comments.  (Ex. A, Compl. ¶¶39-43).  Qualified immunity requires the application of test of objective reasonableness.  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "Even if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context."  Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007) (quoting Malley, 475 U.S. at 341).

The Second Circuit has consistently applied this standard of objective reasonableness to hold that regardless of the existence of a clearly established right, defendant officials are entitled to qualified immunity when reasonable officials could differ as to whether the conduct at issue was unlawful in the particular context.  Palkimas v. Bella, 510 Fed. App'x 64, 66 (2d Cir. 2013) (upholding qualified immunity where due process right to privacy was clearly established "but the right to be free from involuntary disclosure of information such as that contained in the [State agency] letter at issue [was] not clearly established in a particularized sense so that the contours of the right [were] clear to a reasonable official.") (internal quotation marks omitted, alternation supplied); Zieper v. Metzinger, 474 F.3d 60, 68 (2d Cir. 2007) (affirming grant of qualified immunity to officials notwithstanding that First Amendment right not to be coerced into limiting speech was clearly established, because "pre-existing case law would not have made apparent to a reasonable officer that defendants' actions crossed the line" into prohibited conduct); Zahra v. Town of Southold, 48 F.3d 674, 687 (2d Cir. 1995) (defendants entitled to qualified immunity on substantive due process claim challenging their revocation of plaintiff's building permit, even

assuming right was clearly established, because "it was objectively reasonable for defendant officials to believe that they were acting within constitutional bounds").

Here, "pre-existing case law would not have made apparent to a reasonable offic[ial]" that Senator Skoufis' conduct violated plaintiff's First Amendment rights. Zieper, 474 F. 3d at 68. Stated otherwise, even if the First Amendment rights plaintiff asserts in this action were clearly established (which, as explained in Point A supra, they were not), "the contours" of those rights "were not sufficiently clear that every reasonable official" in Senator Skoufis' position would have understood that what he is doing violate[d]" those rights. al-Kidd, 563 at 741. Accordingly, Senator Skoufis is entitled to qualified immunity on plaintiff's damages claims and the claims should therefore be dismissed.

## **CONCLUSION**

For the foregoing reasons, Senator Skoufis respectfully requests that the Court dismiss plaintiff's Complaint in its entirety and with prejudice.

Dated: New York, New York
December 13, 2019

LETITIA JAMES
Attorney General of the
  State of New York
Attorney for Defendant Senator Skoufis
By:


_____/s/_____
David B. Diamond
Assistant Attorney General
28 Liberty Street - 17th Floor
New York, New York 10005
Tel.: (212) 416-8476
david.diamond@ag.ny.gov

cc:     Zachary Giampa, Esq.
        Counsel for Plaintiff Eli Wagschal (via ECF)